UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES MICHAEL WRIGHT                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:13-CV-00747-CRS

GRANGE MUTUAL CASUALTY COMPANY                                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on the motion of Defendant Grange Mutual Casualty Co. ("Grange") for summary judgment (DN 26). For the following reasons, the Court will grant Grange's motion. Plaintiff James Michael Wright's Complaint (DN 1-4) will be dismissed with prejudice.

**I.      BACKGROUND**

Plaintiff owned and operated U.S. Tobacco Outlet in Brandenburg, Kentucky. (Compl., DN 1-4, ¶ 1.) U.S. Tobacco Outlet was a smoke shop that sold tobacco products and accessories, along with other consumer goods. (Compl., DN 1-4, ¶ 7.) Plaintiff maintained property insurance for his business under a Commercial Package Policy issued by Grange. (Certified Policy, DN 26-5.)

On July 2, 2011, a fire engulfed U.S. Tobacco Outlet, destroying the building and its contents. (Compl., DN 1-4, ¶ 9.) After the fire, Grange began investigating the cause and extent of Plaintiff's loss. Grange suspected that Plaintiff intentionally burned his business to recover under the insurance policy.

While pursuing the insurance claim, Plaintiff repeatedly modified the amount of his loss. On September 6, 2011, Plaintiff asserted a total loss of $509,175.32 in his initial sworn statement in proof of loss (DN 26-18). Plaintiff then signed a second sworn statement in proof of loss (DN 26-30) on April 25, 2012, reducing the total loss to only $232,238.00. Finally, on March 23, 2013, Plaintiff raised the total loss to $414,623.16 in a third sworn statement in proof of loss (DN 26-47). Plaintiff, through counsel, also provided an itemized list to substantiate this last figure. (Settlement Demand, DN 26-48.)

As part of its investigation, Grange reviewed Plaintiff's financial records and other relevant documentation. Plaintiff also submitted to an extensive examination under oath. During the examination, Grange questioned Plaintiff on the value of his property loss and his potential involvement in setting the fire.

On July 1, 2013, Plaintiff filed this lawsuit in Meade County Circuit Court. (Compl., DN 1-4.) First, Plaintiff alleges that Grange breached the insurance contract by refusing to pay his claim. (Compl., DN 1-4, Ct. I.) Second, Plaintiff alleges that Grange's refusal to pay his claim constituted bad faith under the common law, the Kentucky Consumer Protection Act ("KCPA"), KRS 367.170, and the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), KRS 304.12-230. (Compl., DN 1-4, Cts. II–IV.)

On July 25, 2013, Grange removed the case to this Court, basing subject matter jurisdiction solely on diversity of citizenship. (Notice of Removal, DN 1.) On August 8, 2013, Grange formally denied Plaintiff's insurance claim based on the policy's provisions regarding "concealment, misrepresentation, or fraud" and "intentional acts." (Denial of Claims, DN 26-57.) Grange now calls upon this Court to grant summary judgment in its favor on all of Plaintiff's claims.

## II. STANDARD

The Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of explaining the basis of its motion and demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). That burden may be satisfied only by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Should the movant meet its burden, the nonmoving party may not simply rest on its prior pleadings; it must produce further evidence showing a genuine issue for trial. *Celotex*, 477 U.S. at 324.

When considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Even so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . . ." *Id.* at 252.

### III. DISCUSSION

#### A. Breach of Contract

In requesting summary judgment on the claim for breach of contract, Grange argues that Plaintiff made misrepresentations and committed intentional acts that relieved the insurer of its obligation to cover the loss. Kentucky law recognizes that "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977); *see Masler v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 633, 635–36 (Ky. 1995). "Interpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). An insurance policy containing clear and unambiguous terms shall be enforced as written. *Id.* at 873.

Grange first argues that Plaintiff's statements following his property loss voided the coverage under the policy's provision concerning "concealment, misrepresentation, or fraud." That provision provides as follows:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.

(Certified Policy, DN 26-5, Form CP 00 90 07 88, at 1.) Such provisions are "'common to most fire insurance policies and . . . uniformly held valid.'" *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky. 1975) (quoting *World Fire & Marine Ins. Co. v. Tapp*, 130 S.W.2d 848, 849–50 (Ky. 1939)). Here, neither the validity of the provision nor the clarity of its terms is challenged.

But, according to Plaintiff, a genuine factual dispute exists as to whether his statements were intentional misrepresentations of material fact.

Grange points to four statements made by Plaintiff that it considers misrepresentations sufficient to void the policy's coverage. Two of those statements concern the profitability of U.S. Tobacco Outlet and the amount of inventory in the store when the fire occurred. The parties devoted the majority of their briefing to sparring over these issues. To support its arguments, Grange depends primarily on the expert report of Jon Libbert, a forensic accountant. (Libbert Report, DN 26-56.) Libbert's report supposedly demonstrates the falsehood of Plaintiff's statements regarding the profitability and inventory of his business. (Libbert Report, DN 26-56.) This report, however, is unsworn and thus is inadmissible hearsay, which may not be considered on summary judgment. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480–81 (6th Cir. 2008); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006). In addition, the Court cannot examine the relevant financial documents firsthand because those materials are not in the record. For those reasons, the Court will not rely on the statements concerning profitability and inventory in reaching a decision in this case.

Grange nevertheless did refer to sufficient evidentiary materials in support of its remaining asserted misrepresentations. First, Grange contends that Plaintiff intentionally misrepresented the amount of cash and coins destroyed in the fire. In his final sworn statement in proof of loss (DN 26-47), Plaintiff claimed a total loss of $414,623.16. That total loss included $4,000 for cash and coins used in store operations. (Settlement Demand, DN 28-48, at 13.) But, during the examination under oath, Plaintiff admitted that the actual amount of cash and coins in the store was approximately $1,400 to $1,500. (Exam. Under Oath, vol. V, DN 26-53, at 800–03.)

Second, Grange asserts that Plaintiff intentionally and falsely denied loaning or advancing personal money to U.S. Tobacco Outlet during the two years before the fire. While being questioned under oath about his financial records, Plaintiff acknowledged that, on May 12 and 26, 2011, he transferred a total of $13,000 from his personal checking account to his business account. (Exam. Under Oath, vol. III, DN 26-51, at 438–40.) Plaintiff explained that U.S. Tobacco Outlet needed those funds "to buy more product." (Exam. Under Oath, vol. III, DN 26-51, at 440.) Nonetheless, Plaintiff later denied that he loaned or advanced personal money to his business within the two year prior to the fire. (Exam. Under Oath, vol. IV, DN 26-52, at 577.) The fire, of course, occurred on July 2, 2011—only thirty-seven days after the last admitted transfer. (Compl., DN 1-4, ¶ 9.)

From the evidence presented, the materiality of those asserted misrepresentations seems plain. The amount of cash and coins lost in the fire is material to the value of the claim and recovery under the policy. In fact, claiming nonexistent items in a sworn statement in proof of loss will void a policy as a matter of law. *Hardin*, 528 S.W.2d at 725. Likewise, Plaintiff's transfers of personal money to U.S. Tobacco Outlet are material to the investigation of the claim and Grange's obligation to pay. The transfers tend to show weakness in Plaintiff's business and thus a potential motive for arson. Plaintiff articulated no arguments to challenge the materiality of those specific misrepresentations.

As the foregoing discussion demonstrates, Grange met the initial burden of supporting its motion for summary judgment. Plaintiff therefore must go beyond the pleadings and come forward with evidence showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. However, Plaintiff has not attempted to raise a "metaphysical doubt as to the material facts." *See Matsushita*, 475 U.S. at 586. Plaintiff offered no response whatsoever to Grange's arguments—

and corroborating evidence—that he made intentional misrepresentations concerning the amount of lost cash and coins and his transfers of personal money to the business. (Pl.'s Resp. to Def.'s Mot. for Summ. J., DN 32.) Accordingly, the Court concludes that Plaintiff's misrepresentations voided the insurance policy under the "concealment, misrepresentation, or fraud" provision. Because Grange had no obligation to cover the property loss, it is entitled to summary judgment on the breach of contract claim. In light of that outcome, the Court will not address Grange's arguments under the "intentional acts" provision.

### B. Bad Faith

Additionally, Grange seeks summary judgment on each of Plaintiff's common law and statutory bad faith claims. Here, Plaintiff premises his claims of bad faith on the common law, the KCPA, and the KUCSPA. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526–27 (6th Cir. 2006) (summarizing the categories of bad faith claims recognized under Kentucky law (citing *Guar. Nat'l Ins. Co. v. George*, 953 S.W.2d 946, 950–51 (Ky. 1997) (Cooper, J., concurring))).

At the outset, the Court notes that Plaintiff cannot maintain a bad faith claim under the KCPA. The KCPA prohibits "[u]nfair, false, misleading or deceptive acts or practices in the conduct of any trade or commerce." KRS 367.170. A private cause of action based on that prohibition may be brought only by a person who "purchases or leases goods or services primarily for personal, family or household purposes." KRS 367.220(1). The purchase of insurance constitutes a purchase of a "service" covered by the KCPA. *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 81 9, 820 (Ky. 1988). Plaintiff, however, purchased a policy of commercial insurance for U.S. Tobacco Outlet. (Certified Policy, DN 26-5.) Commercial insurance is not obtained primarily for personal, family, or household purposes. Hence, Plaintiff

does not fall within the class of persons permitted to pursue KCPA claims. *See Keeton v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723, 726 (Ky. App. 2008). Indeed, Plaintiff concedes that the facts of this case cannot support such a claim. (Pl.'s Resp. to Def.'s Mot. for Summ. J., DN 32, at 14.) For this reason, Grange is entitled to summary judgment on Plaintiff's bad faith claim brought under the KCPA.

Plaintiff's bad faith claims under the common law and the KUCSPA, KRS 304.12-230, likewise fail because Grange is not obligated to cover his loss under the policy. All bad faith claims, whether brought by a first-party claimant or third-party claimant, and whether based on the common law or statute, must satisfy a single test. *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). To prevail on a bad faith claim, Plaintiff must prove three elements:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–47 (Ky. 1986) (Leibson, J., dissenting)) (internal quotation marks omitted).

Plaintiff's bad faith claims falter on the first required element. As explained above, Grange bears no contractual obligation to cover Plaintiff's property loss. Plaintiff voided his coverage under the insurance policy by intentionally misrepresenting material facts concerning the amount of his loss and the circumstance surrounding his claim. "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson*, 25 S.W.3d at 100. Therefore, the Court will also grant summary judgment in Grange's favor on the claims of bad faith arising under the common law and the KUCSPA.

## IV.  CONCLUSION

For the reasons stated above, the Court will grant Grange's motion for summary judgment (DN 26).  A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing Plaintiff's Complaint (DN 1-4) with prejudice.

March 23, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**